DECISION
Raising three assignments of error, plaintiffs-appellants Robert and Ann Fuhrman appeal the trial court's entry of summary judgment for defendants-appellees Garrison Feist Construction Company, Neil Garrison, and Steve Feist on the Fuhrmans' claims for negligence, loss of consortium, and intentional tort. Defendant Wright-Seyferth, Inc., has cross-appealed.
 I. FACTS AND PROCEEDINGS
In November 1994, Wright-Seyferth was employed as the general contractor in charge of constructing an addition to Loveland High School. Wright-Seyferth retained Garrison Feist Construction Company to install the roof trusses for the addition. Robert Fuhrman was among the group of laborers from Garrison Feist who performed the truss installation. During that installation, Fuhrman fell from the top of a wall where he had been standing and was seriously injured.
In March 1995, Fuhrman and his wife, Ann, filed suit against Garrison Feist Construction Company and its proprietors, Neil Garrison and Steve Feist,[1] as well as Wright-Seyferth. Fuhrman asserted various negligence claims; Ann asserted a claim for loss of consortium. In the complaint, Fuhrman alleged that Garrison Feist had unlawfully treated him as an independent contractor for payroll purposes in order to avoid paying workers'-compensation premiums on his behalf, but that he was actually its employee.
In answer to the Fuhrmans' complaint, Garrison Feist asserted, among other things, that the claims were "barred by virtue of Workers' Compensation immunity." In addition, Garrison Feist and Wright-Seyferth filed cross-claims for contribution and indemnification against one another.
In November 1996, while the tort action remained pending, Fuhrman filed a claim for workers'-compensation, citing his November 1994 injuries. After the Bureau of Workers' Compensation (BWC) allowed the claim, Garrison Feist appealed to a district hearing officer of the Industrial Commission, claiming that Fuhrman was not entitled to coverage because he was an independent contractor rather than an employee. The district hearing officer denied Garrison Feist's appeal, concluding that Fuhrman was an employee. In July 1997, Garrison Feist appealed that determination to the Hamilton County Court of Common Pleas pursuant to R.C. 4123.512.
In the meantime, Garrison Feist filed a motion for summary judgment in the pending tort action, once again alleging that, given its status as a "complying employer" under the workers'-compensation statutes, it was immune from liability. In support of its motion, Garrison Feist attached the affidavit of Ken Ruzick, an employee of the BWC, who averred that the BWC's records indicated that Garrison Feist was a "complying employer."
In response, the Fuhrmans moved the court for permission to conduct further discovery before responding to the motion for summary judgment. The Fuhrmans asserted that Ruzick's averment that Garrison Feist was a "complying employer" according to the BWC's records came as a surprise in light of the fact that Neil Garrison and Steve Feist had admitted in their depositions that the company had never paid any workers'-compensation premiums for Fuhrman. The trial court granted the Fuhrmans' motion, thereby permitting further discovery.
The Fuhrmans subsequently moved for leave to amend his complaint to include a cause of action for intentional tort against Garrison Feist and to have the tort action consolidated with the workers'-compensation appeal. The trial court granted the Fuhrmans' motion to amend the complaint and their motion to consolidate the two cases, but specified that the consolidation was solely for the purpose of discovery.
Thereafter, the Fuhrmans learned that Mary Jo Eyink, an employee of the BWC, had conducted an audit of Garrison Feist in order to determine whether it had properly reported its payroll to BWC. According to the Fuhrmans, the results of the audit demonstrated that Garrison Feist had failed to pay any workers'-compensation premiums on Fuhrman's behalf and, therefore, served to contradict Garrison Feist's contention (and Ruzick's averment) that Garrison Feist was a "complying employer" entitled to immunity. In order to bring information regarding the audit before the trial court for consideration in determining the motion for summary judgment, the Fuhrmans sought to depose Eyink and served her with a subpoena duces tecum.
Garrison Feist, as well as the BWC and the Industrial Commission, objected to the Fuhrmans' attempt to depose Eyink and filed motions to quash the subpoena and for a protective order. In support of the motions, they claimed that the information sought to be discovered was privileged pursuant to R.C. 4123.27, given that the BWC was not a party to the tort action. Moreover, they contended that such information was irrelevant to a determination of whether Garrison Feist was entitled to immunity because the BWC had previously issued a "certificate of premium payment" to Garrison Feist, which served to demonstrate that it was a complying employer as a matter of law. The trial court granted the motions. In doing so, the court concluded that the BWC was not a party to the tort action and that the information sought in discovery was, therefore, privileged.
Garrison Feist then renewed its motion for summary judgment on the Fuhrmans' claims. In its written decision granting the motion, the trial court, implicitly concluding that Fuhrman was Garrison Feist's employee, determined that the BWC's certification of Garrison Feist as a complying employer established as a matter of law that it was immune from liability on all of the Fuhrmans' claims, save the intentional-tort claim. Moreover, the court concluded that Garrison Feist was entitled to judgment as a matter of law on Fuhrman's intentional-tort claim given that he had failed to present sufficient evidence to establish a prima facie case for liability.
The trial court went on to grant Garrison Feist's motion for summary judgment on Wright-Seyferth's cross-claims. It also ordered that the consolidation of the tort and workers'-compensation cases be terminated. Finally, the trial court's entries granting summary judgment to Garrison Feist on both the Fuhrmans' claims and Wright-Seyferth's cross-claims were journalized. The entries included Civ.R. 54(B) certifications.
The Fuhrmans have timely appealed the trial court's judgment to this court under the number C-000063. Wright-Seyferth has also timely appealed the judgment under the number C-000080. This court has consolidated the two appeals. But Wright-Seyferth has failed to file a brief with this court or to take any other action with respect to its appeal. Although it is not substantiated in the record, it appears that Wright-Seyferth has not pursued its appeal because it has reached a settlement with Fuhrman. Whatever the case, we hereby dismiss Wright-Seyferth's appeal pursuant to App.R. 18(C) for failure to file a brief. Having done so, we now address the assignments of error raised in the Fuhrmans' appeal.
 II. ASSIGNMENTS OF ERROR
In their three assignments of error, the Fuhrmans allege that the trial court erred in (1) granting summary judgment to Garrison Feist on the negligence and loss-of-consortium claims; (2) denying discovery with respect to the results of the BWC's audit of Garrison Feist; and (3) granting summary judgment to Garrison Feist on the intentional-tort claim. Because the Fuhrmans' first and third assignments of error both involve the same standard of review, we treat them together.
 A. SUMMARY-JUDGMENT STANDARD
Summary judgment shall be granted if the trial court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines that (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion.[2]
In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine whether the trial court was entitled to enter judgment as a matter of law. Accordingly, we afford no deference to the trial court's decision in answering this legal question.[3]
 1. NEGLIGENCE CLAIMS
The Fuhrmans contend that the trial court erred in granting summary judgment to Garrison Feist on the negligence and loss-of-consortium claims based on its conclusion that Garrison Feist was a "complying employer" entitled to immunity under R.C. Chapter 4123.74.
Pursuant to R.C. 4123.35(A), an employer must pay workers'-compensation premiums into the state insurance fund:
 [E]very employer * * * shall pay * * * into the state insurance fund the amount of annual premium the administrator of workers'-compensation fixes for the employment or occupation of the employer * * *. Upon receipt of payment, the bureau immediately shall mail a receipt or certificate to the employer certifying that payment has been made, which receipt is prima-facie evidence of payment.
R.C. 4123.74, in turn, provides immunity for employers who have complied with R.C. 4123.35:
 Employers who comply with section 4123.35 * * * shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition ocurring during the period covered by such premium so paid into the state insurance fund * * *.
Obviously, employers are only protected by this statutory immunity in suits brought by employees, not in suits brought by independent contractors. Although Fuhrman does not take issue with the trial court's implicit conclusion that he was Garrison Feist's employee, because we are proceeding under a de novo standard of review, we must initially consider the propriety of such a conclusion.
Whether an individual is an employee or an independent contractor is ordinarily an issue reserved for determination by the trier of fact.[4]
But where the evidence is not in conflict, the issue may be determined as a matter of law by the trial court.[5] Here, the evidence demonstrated, without conflict, that Fuhrman was Garrison Feist's employee. Most notably, the evidence reflected that Garrison Feist controlled the manner in which Fuhrman performed his work, that Garrison Feist provided his tools and materials, and that it paid him on weekly basis. Given these facts, and the other relevant, undisputed facts, the trial court was entitled to conclude as a matter of law that Fuhrman was an employee.[6]
We now turn to the Fuhrmans' primary argument: that Garrison Feist was not a complying employer. The record in this case contains a certificate of payment issued to Garrison Feist by the BWC for the period of time during which Fuhrman's injury occurred. According to R.C. 4123.35, this certificate was prima facie evidence of Garrison Feist's payment of its premium. Moreover, the certificate served to demonstrate the Garrison Feist was a complying employer as a matter of law.[7] The Fuhrmans contend, however, that the evidence of compliance was rebutted by Garrison Feist's own admissions that it had paid no premiums for Fuhrman.
In Bridges v. Natl. Engineering and Contracting Co.,[8] the Ohio Supreme Court rejected just such an argument, holding the following:
 Once the Industrial Commission has certified that an employer has established industrial coverage and paid its premium, pursuant to R.C. 4123.35, the employer is a complying employer as a matter of law, and is entitled to the benefits of R.C. Chapter 4123.
 An employer's failure to include a particular injured employee in a required payroll report does not deprive the employer of its statutory immunity from a civil action brought by the employee, in the absence of a final determination by the commission that the employer is a noncomplying employer who has not settled its liability to the State Insurance Fund.[9]
 Accordingly, for the purposes of determining whether Garrison Feist was entitled to statutory immunity, the Fuhrmans' proffer of evidence demonstrating that Garrison Feist had failed to pay premiums for Fuhrman was insufficient to rebut Garrison Feist's proof of compliance.
Moreover, we reject the Fuhrmans' contention that, had they been permitted to discover and present as evidence the results of the BWC's audit, they could have rebutted Garrison Feist's proof of compliance, because the audit results would have served as a "final determination" of noncompliance. As the court's discussion of the audit process in Bridges
details, an audit revealing inaccurate payroll reporting or underpayment of premiums by an employer does not alone mean that the employer is "noncomplying" for the purposes of statutory immunity. Rather, an employer becomes noncomplying for the purposes of statutory immunity only after it fails to pay, within the allowed time, the additional premium ordered as the result of the audit.[10] What is more, this final determination of noncompliance is made public (and discoverable) pursuant to R.C. 4123.76 or 4123.78 by a filing with the county recorder.[11]
But the Fuhrmans presented no evidence of such a filing.
Because the Fuhrmans presented insufficient evidence to rebut Garrison Feist's proof that it was a complying employer, we conclude that Garrison Feist was entitled to statutory immunity from liability on the Fuhrmans' various negligence claims, as well as on the loss-of-consortium claim. Given this, the trial court properly entered summary judgment for Garrison Feist on these claims.
 2. INTENTIONAL-TORT CLAIM
Because Garrison Feist was not immune from liability on Fuhrman's intentional-tort claim, we now examine the propriety of the trial court's granting of summary judgment on that claim.[12] We disagree with Fuhrman's assertion that the trial court erred in granting summary judgment to Garrison Feist.
In order to maintain an action for an intentional tort against an employer, an employee must demonstrate the following: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employer to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under these circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.[13] With regard to the proof required for intentional-tort claims, the Ohio Supreme Court has further stated,
 [P]roof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of risk — something short of substantial certainty — is not intent.[14]
In resolving this assignment, we need look no further than the second prong of the Fyffe test to conclude that the trial court correctly granted summary judgment on the claim. Fuhrman adduced no evidence of knowledge by Garrison Feist that harm was substantially certain to occur as a result of the procedure used in erecting the trusses. Fuhrman presented no evidence of previous injuries resulting from the procedure. And although he alleged that Garrison Feist had failed to provide him with adequate safety equipment to perform the task, this evidence was insufficient to demonstrate that Garrison Feist knew that injury was a substantial certainty.[15] Fuhrman's intentional-tort claim accordingly failed as matter of law. The third assignment of error is overruled.
 B. PROTECTIVE ORDER
The Fuhrmans assert, in their second assignment of error, that the trial court erred in denying discovery with respect to the results of the BWC's audit of Garrison Feist. Garrison Feist, on the other hand, contends that that the trial court correctly issued a protective order preventing such discovery because the information sought was privileged.
R.C. 4123.27 provides the following in pertinent part:
 Information contained in the annual statement provided for in section 4123.26 of the Revised Code, and such other information as may be furnished to the bureau of workers'-compensation by employers in pursuance of that section, is for the exclusive use and information of the bureau in the discharge of its official duties, and shall not be open to the public nor be used in any court in any action or proceeding pending therein unless the bureau is a party to the action or proceeding[.] [Emphasis added.]
The Fuhrmans contend that because the workers'-compensation appeal had been consolidated with the tort action, the BWC was a party to that action. Therefore, they argue, no privilege extended to protect the information from discovery. We are unpersuaded by this argument.
In our view, the trial court correctly determined that its consolidation of the cases did not have the effect of making the BWC a party to the tort action. The court aptly noted that the BWC had no interest or stake in that action. And, given that the information was sought for discovery only with respect to the tort action, the trial court properly determined that R.C. 4123.27's privilege operated to prevent discovery. Accordingly, we conclude that the trial court did not err in issuing the protective order. The second assignment of error is overruled.
 III. CONCLUSION
In the appeal numbered C-000063, we affirm the trial court's entry of summary judgment for Garrison Feist on all of the Fuhrmans' claims. We dismiss Wright-Seyferth's cross-appeal numbered C-000080.
Judgment accordingly.
 ________________________ Per Curiam
 Hildebrandt, P.J., Painter and Sundermann, JJ.
[1] Garrison Feist Construction Company, Neil Garrison, and Steve Feist will hereinafter be referred to collectively as "Garrison Feist."
[2] Civ.R. 56(C).
[3] Morehead v. Conley (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.
[4] Bostic v. Connor (1987), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph one of the syllabus.
[5] Bostic, supra, 37 Ohio St.3d at 146, 524 N.E.2d at 884; Iames v.Murphy (1995), 106 Ohio App.3d 627, 666 N.E.2d 1147.
[6] Bostic, supra; R.C. 4123.01(A)(1)(c).
[7] Bridges v. Natl. Engineering and Contracting Co. (1990),49 Ohio St.3d 108, 551 N.E.2d 163.
[8] Id.
[9] Bridges, supra, at paragraphs two and three of the syllabus.
[10] Bridges, supra, 49 Ohio St.3d at 115-116, 551 N.E.2d at 170.
[11] Bridges, supra, 49 Ohio St.3d at 116, 551 N.E.2d at 170.
[12] Blankenship v. Cincinnati Milacron Chemicals, Inc. (1982),69 Ohio St.2d 608, 433 N.E.2d 572, paragraph one of the syllabus.
[13] Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.
[14] Id., paragraph two of the syllabus.
[15] Spitler v. K C Serv. Station Maintenance Co., Inc. (1993),90 Ohio App.3d 49, 627 N.E.2d 1073.